740 N.W.2d 607 (2007)
274 Neb. 412
STATE of Nebraska ex rel. NEBRASKA STATE BAR ASSOCIATION, Relator
v.
John C. KINNEY, Respondent.
No. S-87-352.
Supreme Court of Nebraska.
November 2, 2007.
*610 Kent L. Frobish, Assistant Counsel for Discipline, for relator.
Robert F. Bartle, of Bartle & Geier Law Firm, Lincoln, for respondent.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
PER CURIAM.
This court disbarred John C. Kinney in May 1987 after he embezzled about $23,000 from his employer's law firm.[1] Kinney applied for reinstatement. We appointed a referee, who recommended that we readmit Kinney contingent upon Kinney's taking a course in legal ethics and successfully passing the Nebraska bar examination. Counsel for Discipline filed exceptions to the referee's recommendations.

BACKGROUND
In 1981, Kinney was admitted to the practice of law in Nebraska. Robert G. Scoville, an attorney practicing in South Sioux City, Nebraska, hired Kinney as an associate attorney and paid Kinney a salary. As an employee, Kinney was obligated to turn over to the law firm all fees earned and paid to him. In 1984, however, Kinney kept about $20,000 in fees that he should have turned over to the firm. When this theft came to light, Scoville confronted Kinney, but agreed to give him another chance. Scoville did not report the theft to the police, and he allowed Kinney to continue his employment as an associate. Kinney's father paid Scoville the $20,000 restitution.
According to Kinney, he had an alcohol problem when the 1984 incident occurred. Once Scoville discovered the theft, Kinney entered a 30-day inpatient treatment program. After completing the program, Kinney became involved with Alcoholics Anonymous.
In 1986, Scoville discovered that Kinney had again misappropriated funds. This time, Kinney had stolen about $23,000. Scoville fired Kinney and filed a grievance against him with the Counsel for Discipline in January 1987. Kinney admitted to the Counsel for Discipline that he had embezzled about $23,000 from Scoville. Kinney agreed to make full restitution to Scoville over time. The county attorney did not charge Kinney with a crime.
In April 1987, Kinney signed a voluntary surrender of license, admitting that he violated DR 1-102(A)(1), (4), and (6) of the Code of Professional Responsibility. In May 1987, we disbarred Kinney.[2]
Kinney applied for reinstatement of his license in December 1998. We denied his application without a hearing. In October 2006, Kinney filed the current application for reinstatement. Counsel for Discipline resisted Kinney's application. We appointed a referee to conduct an evidentiary hearing. Following the hearing, the referee recommended that we readmit Kinney to the practice of law, contingent upon Kinney's taking a course in legal ethics and successfully passing the Nebraska bar examination. Counsel for Discipline filed exceptions to the referee's recommendations.

*611 ASSIGNMENTS OF ERROR
Counsel for Discipline takes exception to the referee's finding that Kinney has overcome the former adverse judgment as to his character and that he currently possesses good moral character sufficient to warrant reinstatement.

STANDARD OF REVIEW
[1, 2] In attorney discipline and admission cases, we review recommendations de novo on the record, reaching a conclusion independent of the referee's findings.[3] When credible evidence is in conflict on material issues of fact, however, we consider and may give weight to the fact that the referee heard and observed the witnesses and accepted one version of the facts rather than another.[4]

ANALYSIS
[3-7] As the court that disbarred Kinney, we have inherent power to reinstate him to the practice of law.[5] As recently noted in State ex rel. Counsel for Dis. v. Mellor,[6] this court owes a solemn duty to protect the public and the legal profession when considering an application for reinstatement.[7] A mere sentimental belief that a disbarred lawyer has been punished enough will not justify his or her restoration to the practice of law.[8] The primary concern is whether the applicant, despite the former misconduct, is now fit to be admitted to the practice of law. Also, we must determine whether there is a reasonable basis to believe that the present fitness will permanently continue in the future.[9] In other words, reinstatement after disbarment should be difficult rather than easy.[10]
[8-11] A disbarred attorney has the burden of proof to establish good moral character to warrant reinstatement.[11] The applicant can overcome this burden by clear and convincing evidence.[12] The proof of good character must exceed that required under an original application for admission to the bar because it must overcome the former adverse judgment of the applicant's character.[13] "It follows that `[t]he more egregious the misconduct, the heavier an applicant's burden to prove his or her present fitness to practice law.'"[14]
[12] We disbarred Kinney in 1987 after he embezzled nearly $23,000 from his employer's law firm. This was not the first time Kinney had taken money from his employer. In 1984, he had embezzled about $20,000 in fees from the same employer. Despite the misconduct that led to Kinney's disbarment, the referee determined that Kinney had proved by clear and convincing evidence that he currently possesses good moral character that would warrant reinstatement. We agree.
*612 After we disbarred Kinney, he sought alcohol and drug treatment. He completed a 30-day inpatient program for alcohol, drugs, and gambling, and then lived at a halfway house for an additional 90 days. Kinney also participated in Alcoholics Anonymous following his completion of these programs. Kinney testified that he has not had any alcohol or drug problems since completing rehabilitation in 1987. He explained that he might have a glass of wine occasionally when he is at dinner with friends, but that is the extent of his current alcohol consumption. He further stated that he has attended many social activities where free alcohol is provided, but has had no recurrence of his previous alcohol problems. In Mellor,[15] we were unable to predict whether the respondent could function as a lawyer without reverting to addictive and potentially unlawful behavior. Here, the record shows that Kinney is effectively addressing his drug and alcohol problems.
In addition, Kinney has paid restitution to Scoville. According to Kinney, by 1995, he had already paid Scoville an amount "in the high teens or low 20s." He settled his remaining restitution with a $2,000 lump-sum payment to Scoville's estate in 1995.
One concern Counsel for Discipline raised was that Kinney had filed for bankruptcy in 1995. Counsel for Discipline argues that although Kinney made restitution to Scoville and his estate, Kinney discharged about $30,000 owed to other creditors. We determine, however, that Kinney had a right to seek relief under the bankruptcy laws just as any other citizen would. We will not penalize him for exercising this right under these circumstances.
Kinney also presented extensive evidence regarding his work history following his disbarment. In 1988, Kinney moved to Kansas City, Missouri. There he worked as a contract administrator for a geotechnical environmental engineering firm. After leaving the engineering firm in April 2001, Kinney did legal research as an independent contractor for a staff attorney at another company. In 2005, Kinney began working with the staff attorney as a legal assistant 3 days per week. His duties included conducting legal research and preparing witnesses and exhibits. The record concerning Kinney's work history reflects that Kinney was a responsible and trusted employee.
Kinney has been involved with many charitable organizations in the Kansas City area. These organizations include the EVE project (Elders Volunteering for Elders), where he has served as a volunteer, board member, and board chairman; the First Step Fund, where as a volunteer, he would help review leases and offer business assistance; Operation Breakthrough; Friendship House; Shepherd's Center; and the Cleaver YMCA project.
At the hearing, two persons testified for Kinney. When asked his opinion about Kinney's reputation for honesty and integrity, one responded, "I believe [Kinney is] a trustworthy and dedicated individual that has used the last 20 years to his great credit to benefit those around him." The other individual, a lawyer, described Kinney as "trustworthy" and "honest."
[13] Besides this testimony, Kinney offered 11 letters supporting his reinstatement, including letters from his wife, friends, supervisors, and other professional and community acquaintances. Unlike Mellor, where the record contained no testimony or written support from lawyers or judges regarding the respondent's character and fitness to practice law, two lawyers *613 wrote letters supporting Kinney. As we noted in Mellor, legal professionals who are acquainted with an individual are in a unique position to assess that person's character and fitness to be a lawyer.[16] The lawyers writing for Kinney were aware of Kinney's past, and yet they fully supported his reinstatement. We have placed considerable weight on such evidence in deciding whether a disbarred lawyer has met the burden of showing rehabilitation sufficient to warrant reinstatement.[17]
The referee found Kinney's testimony to be "honest, forth-right and compelling." The record reflects that Kinney takes full responsibility for his past mistakes. We determine that given his successful rehabilitation, restitution payments, responsible work history, and volunteer service, Kinney has taken positive steps over the last 20 years to turn his life around. We conclude that Kinney has met his burden of establishing good moral character to warrant reinstatement.
[14, 15] Besides moral reformation, an applicant for reinstatement after disbarment must also otherwise be eligible for admission to the bar as in an original application.[18] The applicant must show that he or she is currently competent to practice law in Nebraska.[19]
[16] Although Kinney has engaged in law-related employment, he has not practiced law in the last 20 years. He testified that he attended continuing education programs through his employment. These included seminars on contracts, insurance, and loss prevention. The only actual continuing legal education he has had, however, was a 3-hour ethics seminar put on by the Missouri Bar Association in October 2006. Therefore, we agree with the referee's recommendation that Kinney's readmission to practice law should be contingent upon his successfully passing the Nebraska bar examination.

CONCLUSION
We conclude that Kinney has met his burden of showing by clear and convincing evidence that if he passes the Nebraska bar examination, his license to practice law in Nebraska should be reinstated. His application is conditionally granted. Costs taxed to respondent.
JUDGMENT OF CONDITIONAL REINSTATEMENT.
NOTES
[1] State ex rel. NSBA v. Kinney, 225 Neb. 340, 405 N.W.2d 17 (1987).
[2] Id.
[3] See State ex rel. Counsel for Dis. v. Mellor, 271 Neb. 482, 712 N.W.2d 817 (2006).
[4] See id.
[5] See id.
[6] Id.
[7] See id.
[8] Id.
[9] Id.
[10] Id.
[11] Id.
[12] Neb. Ct. R. of Discipline 10(J) and (V) (rev. 2005); State ex rel. Counsel for Dis. v. Mellor, supra note 3.
[13] State ex rel. Counsel for Dis. v. Mellor, supra note 3.
[14] Id. at 485, 712 N.W.2d at 820, quoting Matter of Robbins, 172 Ariz. 255, 836 P.2d 965 (1992).
[15] State ex rel. Counsel for Dis. v. Mellor, supra note 3.
[16] State ex rel. Counsel for Dis. v. Mellor, supra note 3.
[17] Id.
[18] Id.
[19] See id.